UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION



UNITED STATES OF AMERICA

CASE NO. 8:17 cr 190 T17 t6w

v.

18 U.S.C. § 1341
18 U.S.C. § 1957

JOSEPH BASSLER

## INFORMATION

The Acting United States Attorney charges:

## COUNT ONE
### (Mail Fraud)

### A.   Introduction

At times material to this Information:

1.     British Petroleum (BP) was a company engaged in, among other things, oil exploration and production in the United States and elsewhere. BP's subsidiaries included BP Exploration and Production, Inc. (BP Exploration).

2.     On or about April 20 and 21, 2010, an explosion and fire occurred on the Deepwater Horizon, an oil rig in the Gulf of Mexico. The resulting oil spill, with which BP was associated, caused oil pollution across the Gulf of Mexico.

3.     From in or about May 2010 through on or about August 23, 2010, BP operated a process for submission directly to BP and resolution by BP of claims of individuals and businesses for costs, damages, and other losses incurred as a result of the oil discharges due to the Deepwater Horizon incident.

4.     In or about June 2010, BP established the Gulf Coast Claims Facility for the purpose of administering, mediating, and settling certain claims of individuals and businesses for costs, damages, and other losses incurred as a result of the Deepwater Horizon incident.

5.     On or about March 2, 2012, BP entered into a Settlement Agreement with plaintiffs in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, a class-action lawsuit pending in the United States District Court for the Eastern District of Louisiana (Case No. 2:10-md-02179-CJB-SS). The Settlement Agreement established the new Deepwater Horizon Court-Supervised Settlement Program (Settlement Program), which replaced the Gulf Coast Claims Facility.

6.     After June 4, 2012, claims against the Settlement Program were to be submitted to the Deepwater Horizon Economic Claims Center (DHECC) located in Hammond, Louisiana, which was established to review and pay qualified claims under court supervision.

7. To seek payment from the DHECC for damages incurred as a result of the oil spill, an individual or business was required to complete a DHECC Claim Form. The individual or business could submit the form to the DHECC Claims Facility in Hammond, Louisiana, through the internet, or by mail through the U.S. Postal Service or other private, commercial carrier. As part of the claim application, the individual or business seeking payment was required to elect to receive any payment by wire transfer directly into the claimant's bank account (or account of their counsel) or by check via mail. Payments were made from, among other funds, the BP Economic and Property Damages Settlement Trust, General Claims Fund (the BP Fund).

8. JOSEPH BASSLER was a resident of St. Petersburg, Florida, engaged in the business of, among other things, preparing tax returns and other documentation for individuals and businesses. At various times this commercial enterprise was conducted from JOSEPH BASSLER's home office in St. Petersburg.

**B.**  **Scheme**

9. Beginning on an unknown date, but no later than on or about April 23, 2012, and continuing until at least on or about July 9, 2013, in the Middle District of Florida and elsewhere, the defendant,

JOSEPH BASSLER,

3

did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C.   Manner and Means of the Scheme

10.    The manner and means by which the defendant sought to accomplish the scheme and artifice included, among other things, the following:

a.    The defendant would and did hold himself out to the public as a professional accountant who could assist companies affected by the Deepwater Horizon oil spill in filing claims for losses with the DHECC.

b.    The defendant would and did enter into contracts with companies affected by the oil spill for the provision of accounting services, which included the preparation of monthly profit and loss statements in support of claims filed with the DHECC.

c.    The defendant would and did charge his clients a small flat fee for his accounting services, with the expectation that the defendant's clients would pay him a percentage of their recoveries from the DHECC.

d.    The defendant would and did prepare and submit fraudulently-inflated claims falsely alleging lost income on behalf of his clients to the DHECC.

4

e. The defendant would and did create false documents, including false monthly profit and loss statements, which he would and did provide to DHECC in support of these fraudulent lost income claims.

f. The defendant would and did cause the DHECC to evaluate and approve the fraudulent lost income claims he prepared and submitted on behalf of his clients.

g. The defendant would and did cause the DHECC to send checks to his clients via the U.S. Postal Service to compensate them for the lost income fraudulently claimed.

h. The defendant would and did maintain bank accounts into which he deposited his portion of the fraudulently-obtained DHECC payments.

i. The defendant would and did conceal, misrepresent, and hide, and cause to be concealed, misrepresented, and hidden, the acts done in furtherance of the scheme and the purpose of those acts.

## D.   **Execution of the Scheme**

11. On or about October 31, 2012, in the Middle District of Florida and elsewhere, for the purpose of executing and attempting to execute the aforesaid scheme and artifice, the defendant did knowingly cause to be placed

in an authorized depository for mail matter, and caused to be deposited with the United States Postal Service Check No. ****3638 in the amount of $397,884.93 from the BP Fund and made payable to Beach & Luxury Realty, Inc., for delivery according to the directions thereon, from New Orleans, LA to 7340 Gulf Blvd., St. Petersburg, FL.

In violation of 18 U.S.C. §§ 1341 and 2.

### COUNT TWO
**(Illegal Monetary Transaction)**

1.     The allegations contained in paragraphs 1 through 11 of Count One of this Information are hereby realleged and incorporated herein by reference.

2.     On or about November 15, 2012, in the Middle District of Florida, and elsewhere, the defendant,

JOSEPH BASSLER,

did knowingly engage and attempt to engage in a monetary transaction in and affecting interstate and foreign commerce in criminally-derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud, in violation of 18 U.S.C. § 1341, in that the defendant knowingly engaged and attempted to engage in a monetary

transaction, that is, the purchase of a JP Morgan Chase Cashier's Check in the amount of $22,598.49.

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURES

1.      The allegations contained in Counts One and Two of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1341, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or property traceable to such property.

4.      The property to be forfeited includes, but is not limited to, a money judgment in the amount of $639,206.31, representing the amount of proceeds obtained as a result of the offenses as charged in Count One.

5.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

W. STEPHEN MULDROW
Acting United States Attorney

By: _____
Rachel K. Jones
Assistant United States Attorney

By: _____
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section